IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TITUS BATES,<br>Movant, | : | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| v. | : | CRIMINAL ACTION NO.<br>1:13-CR-00501-ELR-CMS-1 |
| UNITED STATES OF AMERICA,<br>Respondent. | : | CIVIL ACTION NO.<br>1:21-CV-01694-ELR-CMS |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Titus Bates, confined at United States Penitentiary McCreary in Pine Knot, Kentucky, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 265). Respondent filed a response. (Doc. 276). Movant's motion to amend his § 2255 motion (Doc. 275) is **GRANTED**. The Court will consider Movant's supplemental claims along with his original motion.

For the reasons stated below, it is **RECOMMENDED** that the instant motion to vacate (Doc. 265) be **DENIED**.

### I. Background

In 2018, Movant was convicted of assaulting, resisting, or impeding a federal officer in performance of his official duties (Count 1), in violation of 18 U.S.C. § 111(b); knowingly using, carrying, and discharging a firearm during and in relation to a crime of violence (assault on a federal officer) (Count 2), in violation of 18 U.S.C. § 924(c)(1)(A)(iii); possession with intent to distribute marijuana

(Count 3), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and possession of a firearm by a convicted felon (Count 5), in violation of 18 U.S.C. §§ 922(g)(1), 924(e); and was sentenced to a total active term of 360 months of imprisonment.[1] (Doc. 230). On direct appeal, the Eleventh Circuit affirmed Movant's convictions and sentence. *United States v. Bates*, 960 F.3d 1278 (11th Cir. 2020). According to the Eleventh Circuit, the following events took place during the incident in question:

> In the early morning hours of November 21, 2013, a task force of federal and state officers executed a warrant for Bates's arrest and a search of his residence for drug-related offenses. The officers approached the side door to Bates's home, announced that they were the police, and commanded that the door be opened. After no one answered, the officers began to ram the door. Shortly thereafter, Bates fired two gunshots through the door, hitting one federal officer in the leg. Bates then called 9-1-1 and told the operator "the police at my door" and to "please tell 'em don't shoot me." He also said, "I thought it was somebody trying to come in," and "I hope I ain't shot people." Bates eventually opened the front door and was taken into custody.
>
> When officers took Bates to a patrol car, Bates told Bureau of Alcohol Tobacco and Firearms ("ATF") Agent Kimberly Underwood that he did not know the police were at his door and that he thought he was being robbed. After officers put Bates in custody, they searched his residence and found approximately seven pounds of marijuana in the kitchen, two shell casings in the living room, and Bates's firearm in the basement, indicating Bates had dropped it down a vent.

*Id.* at 1284.

---

[1] Movant pleaded guilty to Counts 3 and 5 and was found guilty by a jury of Counts 1 and 2. (Doc. 230 at 1).

In 2021, Movant filed the instant § 2255 motion. (Doc. 265). Movant subsequently filed several supplements to his motion. (Docs. 275, 279). In his motion and supplements, Movant raises the following claims:

(1) Movant received ineffective assistance of trial counsel when counsel

(a) failed to present testimony from a psychiatrist;

(b) failed to present evidence of Movant's medical records;

(c) failed to present Movant's statements made to a police officer;

(d) failed to move for a mistrial as a result of misconduct from a juror;

(e) operated under a conflict of interest; and

(f) filed a motion to dismiss a violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

(3)[2] Movant's guilty plea to Count 5 was not knowing and voluntary under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and counsel was ineffective for failing to raise this argument; and

(4) Count 1 is not a crime of violence for purposes of Count 2.

(Doc. 266 at 3-9; Doc. 275-2 at 1-4; Doc. 279 at 1-5).

---

[2] In Claim 2, Movant argued that his prior state conviction for possession of marijuana with intent to distribute does not qualify as a controlled substance offense under the Sentencing Guidelines. (Doc. 266 at 6-7; *see* Doc. 276 at 23-25). However, Movant subsequently withdrew this claim. (Doc. 277 at 1).

## II. DISCUSSION

### *A. Claim 1*

To prevail on a claim of ineffective assistance of counsel, a prisoner must meet a two-part test established by *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that "counsel's performance was deficient." *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019). Counsel's performance is deficient only if it falls "below an objective standard of reasonableness." *Id.* (internal quotation marks omitted). "There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and, therefore, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). Second, a prisoner must show that he suffered prejudice as a result of counsel's deficient performance. *Id.* To establish prejudice, a prisoner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). A court need not address both prongs if a prisoner makes an insufficient showing on one. *Id.*

*1. Claim 1(a)*

In Claim 1(a), Movant argues that he received ineffective assistance of trial counsel when counsel failed to present testimony from a psychiatrist. (Doc. 266 at 3). In particular, he contends that Dr. Tomina Schwenke should have been allowed to testify in support of Movant to show that he did not intend to shoot at a law enforcement officer. (*Id.* at 3-4). However, the Court ruled that Dr. Schwenke's testimony was inadmissible psychiatric evidence. (Doc. 247 at 47-48). The Eleventh Circuit subsequently affirmed the Court's ruling. *Bates*, 960 F.3d at 1288-91. Counsel cannot be deficient for doing exactly what Movant alleges counsel failed to do, nor can counsel be deficient for failing to have inadmissible evidence admitted. *See Tompkins v. Moore*, 193 F.3d 1327, 1334 (11th Cir. 1999) ("[W]e will not hold an attorney ineffective for failing to offer inadmissible evidence."); *see also Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Counsel did not act deficiently and consequently was not ineffective. *See Khan*, 928 F.3d at 1272. Accordingly, Movant is not entitled to relief on this claim.

*2. Claim 1(b)*

In Claim 1(b), Movant argues that he received ineffective assistance of trial counsel when counsel failed to present evidence of Movant's medical records. (Doc.

266 at 3). However, Movant's argument on this point is not clear, as it appears that he conflates two different sets of records involving two different incidents: medical records from 2002 after he was shot in a robbery, and records from 2013 after the incident for which he was convicted showing that he had been injured in the incident by law enforcement officers. (*See id.* at 3; Doc. 249 at 42, 44, 46-48). Nevertheless, the Court will consider both sets of records.

With respect to the 2013 records, counsel withdrew the records because she "thought the government wanted them. . . . I was being nice." (Doc. 249 at 47-48). However, contrary to Movant's contention, counsel was not ineffective for withdrawing these records. Other than a conclusory allegation that these records were "crucial," (Doc. 266 at 3), Movant does not explain how these records would have helped his defense, and the Court will not guess at arguments to raise on Movant's behalf. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him."); *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (cautioning that although pro se litigants are afforded liberal construction of their pleadings, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action" (internal quotation marks omitted)); *see also Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017)

(reiterating that "a § 2255 movant bears the burden to prove the claims in his § 2255 motion" (internal quotation marks omitted)). In any event, these records would not have been relevant to the charges at issue, given that "it seems to be implied . . . by the cross-examination that the arresting team somehow roughed up or injured or assaulted Mr. Bates as he was taken into custody," (Doc. 249 at 46)—in other words, after the actions taken by Movant for which he was convicted had already occurred. *See* Fed. R. Evid. 401. These after-the-fact injuries would not have had any bearing on, for example, whether Movant knew that he had shot at a law enforcement officer, or whether he possessed a firearm despite being a convicted felon. Thus, because the 2013 records would not have been relevant to Movant's defense, counsel was not ineffective for withdrawing these records. *See Khan*, 928 F.3d at 1272.

With respect to the 2002 records, Movant contends that counsel should have presented his medical records to show that after he was shot in 2002, he became more paranoid, which would have helped his defense that he did not know that he had shot at a law enforcement officer during the incident in question. (Doc. 266 at 3). However, counsel was not ineffective for failing to present these records. Indeed, counsel did attempt to present these records, but the Court excluded them because the records, standing alone, were not relevant to showing Movant's state of mind during the incident in question. (Doc. 249 at 48-49, 89). The Eleventh Circuit subsequently affirmed the Court's ruling. *Bates*, 960 F.3d at 1290-91. As discussed

above, counsel cannot be deficient for doing exactly what Movant alleges counsel failed to do, nor can counsel be deficient for failing to have inadmissible evidence admitted. *See Tompkins*, 193 F.3d at 1334. Counsel did not act deficiently and consequently was not ineffective. *See Khan*, 928 F.3d at 1272.

To the extent that Movant argues that counsel should have called Movant's brother to testify with respect to the 2002 records in order to have them admitted, (*see* Doc. 266 at 3 (alleging that counsel failed to call witnesses, but failing to identify those witnesses); *see also* Doc. 277 at 4), counsel did not act deficiently. At trial, counsel stated that "it is in Mr. Bates's best interest not to call him." (Doc. 249 at 89). Counsel made the tactical decision not to call Movant's brother, and such a decision does not constitute deficient performance. *See Khan*, 928 F.3d at 1272; *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); *Tompkins v. Moore*, 193 F.3d 1327, 1334 (11th Cir. 1999) (concluding that counsel's failure to call a witness who could exonerate the petitioner did not constitute deficient performance because counsel believed the witness "would not make a good witness"); *United States v. Lee*, No. 4:15CR38/MW/MAF, 2020 WL 7871946, at *8 (N.D. Fla. Dec. 3, 2020) ("Counsel cannot be deemed constitutionally ineffective for choosing not to call a witness whose testimony would harm his client's case."), *report and*

*recommendation adopted*, No. 4:15CR38-MW/MAF, 2021 WL 22824 (N.D. Fla. Jan. 4, 2021). Accordingly, Movant is not entitled to relief on this claim.

*3. Claim 1(c)*

In Claim 1(c), Movant argues that he received ineffective assistance of trial counsel when counsel failed to present Movant's statements made to a police officer. (Doc. 266 at 4). In particular, he contends that counsel should have introduced statements made by Movant to ATF agent Kim Underwood that he had previously been robbed and that he did not know law enforcement was at the door. (*Id.*; *see* Doc. 247 at 28-29, 32). Yet this claim fails the same reasons as above: counsel did attempt to have these statements admitted, but the Court ruled the statements were inadmissible hearsay, and the Eleventh Circuit affirmed the Court's ruling. *Bates*, 960 F.3d at 1291-92; (Doc. 247 at 39-40). Once again, counsel cannot be deficient for doing exactly what Movant alleges counsel failed to do, nor can counsel be deficient for failing to have inadmissible evidence admitted. *See Tompkins*, 193 F.3d at 1334. Counsel did not act deficiently and consequently was not ineffective. *See Khan*, 928 F.3d at 1272. Accordingly, Movant is not entitled to relief on this claim.[3]

[3] To the extent Movant also argues that counsel should have sought Underwood's bodycam footage, (*see* Doc. 266 at 4), according to the Government, "there is no evidence that any body camera footage existed in this case," (Doc. 276 at 19). In any event, counsel did seek bodycam footage: in a letter to Movant,

*4. Claim 1(d)*

In determining whether counsel was ineffective for failing to object or move for a mistrial, a court must "ask whether there is a reasonable probability of a different result if counsel had objected or moved for a mistrial. That, of course, requires at a minimum an error meriting an objection or a mistrial." *Brewster v. Hetzel*, 913 F.3d 1042, 1052 (11th Cir. 2019). Counsel does not necessarily perform deficiently for failing to move for a mistrial, even when a request for a new trial might be granted. *Hammond v. Hall*, 586 F.3d 1289, 1333 (11th Cir. 2009). Instead, counsel may have valid strategic reasons not to call for a mistrial. *Id.* Moreover, the ultimate question is not whether the outcome would have been different but for the alleged error, but whether the error rendered the proceeding "fundamentally unfair or unreliable." *Brewster*, 913 F.3d at 1052 n.3 (internal quotation marks omitted).

"[T]rial judges may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." *Renico v. Lett*, 559 U.S. 766, 773-74 (2010) (internal quotation marks omitted). Nevertheless, this "power ought to be used with the greatest caution, under urgent

---

counsel stated that "I spoke to the prosecutor while Investigator Underwood was present, and she was adamant that there was no video. In the absence of any evidence in the record, I don't have a basis to say she lied." (Doc. 266 at 11).

circumstances, and for very plain and obvious causes." *Id.* (internal quotation marks omitted).

In Claim 1(d), Movant argues that he received ineffective assistance of trial counsel when counsel failed to move for a mistrial as a result of misconduct from a juror. (Doc. 266 at 3). In particular, he contends that counsel should have moved for a mistrial when the parties discovered that one of the jurors had searched for Movant's name on Google. (*Id.*).

After one juror reported that she overheard another juror mentioning to a third juror that she had done a Google search of Movant, the Court conducted an investigation and interviewed each juror individually. (Doc. 243 at 14-49). According to the first juror, she could hear the second juror "kind of whispering" to the third juror that she had done a Google search, but the second juror did not say "anything beyond that she did a search." (*Id.* at 24). Although the first juror stated that several other jurors were in range to hear the second juror's comments, no other jurors except for the third juror reported hearing anybody having conducted independent research in the case. (*Id.* at 23-49). The third juror similarly stated that the second juror told her that she had "looked his name up," but had not done anything else. (*Id.* at 47).

Movant's counsel sought to have the second and third jurors dismissed, and the Court agreed. (*Id.* at 49-50, 52). With respect to the second juror, the Court

found that she "clearly knew that she was engaging in misconduct." (*Id.* at 52). With respect to the third juror, the Court concluded that she sincerely believed that the second juror's comment to her was minor and did not fully realize the gravity of her failure to immediately bring the matter to the Court's attention, but the Court determined that "we're just not willing to take a chance with that." (*Id.* at 53). After dismissing the second and third jurors, 12 jurors remained. (*Id.* at 52).

Based on the evidence above, Movant has shown neither deficient performance nor prejudice. Counsel made the decision to move for the dismissal of the two jurors rather than move for a mistrial, and given the fact that the second juror did not reveal anything other than that she had Googled Movant's name and the other jurors did not state that they were aware of people conducting independent research, there is no reason to believe that the remaining jurors had been improperly affected by the second juror's misconduct. In addition, the misconduct was not sufficiently severe to demonstrate a "manifest necessity" of calling a mistrial, *Renico*, 559 U.S. at 774, and neither was it a "very plain and obvious cause[]" for a mistrial, *id.* Thus, it is very unlikely that counsel would have been successful in moving for a mistrial, especially given the Court's comment that a mistrial ultimately did not occur: "I hope she understands how *close* she came to *possibly* causing a mistrial here." (Doc. 243 at 52 (emphasis added)). Given that the Court would not have granted a motion for a mistrial, counsel was not deficient for failing

to make such a futile motion, and Movant was not prejudiced by that failure. *See Khan*, 928 F.3d at 1272; *Osley*, 751 F.3d at 1222; *Pinkney*, 876 F.3d at 1297. Accordingly, counsel was not ineffective, and Movant is not entitled to relief as to this claim.

*5. Claim 1(e)*

The right to effective assistance of counsel "includes having counsel whose work is not affected by a conflict of interest." *United States v. Williams*, 902 F.3d 1328, 1332 (11th Cir. 2018). A prisoner claiming ineffective assistance of counsel due to a conflict of interest must show "an actual conflict, i.e., a conflict that adversely affected his counsel's performance." *Id.* (brackets and internal quotation marks omitted). Such a conflict must be more than "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

In Claim 1(e), Movant argues that trial counsel operated under a conflict of interest. (Doc. 266 at 4). However, Movant has not shown that counsel had an actual conflict of interest, as his allegation is entirely conclusory and is insufficient to state a claim. *See Williams*, 902 F.3d at 1332; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted earlier, Movant "bears the burden to prove the claims in his § 2255 motion." *Beeman*, 871 F.3d at 1222 (internal quotation marks omitted). Movant has failed to do so. Consequently, Movant is not entitled to relief on this claim.

*6. Claim 1(f)*

In Claim 1(f), Movant argues that trial counsel was ineffective for filing a motion to dismiss a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when the prosecution took actions to cure the alleged violation. (Doc. 266 at 6). He contends that counsel instead should have further investigated what other evidence might have been withheld in violation of *Brady*. (*Id.*). However, Movant's argument consists of nothing more than baseless speculation, as he provides no factual support for this contention. Movant provides no description of what kind of evidence might have been uncovered and how it might have helped his defense. *See Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1054 (11th Cir. 2017) (explaining that to establish a *Brady* violation, a defendant must prove "(1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant.") Instead, Movant merely "think[s] what else could have been withheld." (Doc. 266 at 6). As discussed earlier, the Court cannot and will not argue Movant's case for him, *Campbell*, 760 F.3d at 1168-69. Ultimately, Movant's allegation is entirely conclusory and is grossly insufficient to state a claim, let alone to carry his burden of proof. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Beeman*, 871 F.3d

at 1222. Movant has not shown that counsel was ineffective, and thus, he is not entitled to relief on this claim.

*B. Claim 3*

In Claim 3, Movant argues that his guilty plea to Count 5 was not knowing and voluntary under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and counsel was ineffective for failing to raise this argument. (Doc. 275-2 at 1-4). However, the Eleventh Circuit already ruled on this claim, holding that Movant is not entitled to relief under *Rehaif*. *Bates*, 960 F.3d at 1295-96. Thus, because the Eleventh Circuit already ruled on this claim, Movant is precluded from raising it again in a § 2255 motion.[4] *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence that he already raised and that [the appellate court] rejected in his direct appeal." (citation and internal quotation marks omitted)); *accord United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a

[4] Movant argues that under the subsequent Supreme Court case *United States v. Gary*, a *Rehaif* error constitutes a structural error requiring automatic reversal. (Doc. 275-2 at 1-2). Movant has confused his cases, however. The Fourth Circuit, not the Supreme Court, held so. 954 F.3d 194 (4th Cir. 2020), *rev'd sub nom. Greer v. United States*, 141 S. Ct. 2090 (2021). Instead, the Supreme Court explicitly rejected the Fourth Circuit's holding in *Gary*, holding in the companion case to *Gary* that a *Rehaif* claim does not involve structural error. *Greer v. United States*, 141 S. Ct. 2090, 2100 (2021) ("A *Rehaif* error in jury instructions is . . . not structural.").

matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (brackets and internal quotation marks omitted)). And it follows that counsel was not ineffective for failing to raise a *Rehaif* claim that the Eleventh Circuit rejected.[5] *See Khan*, 928 F.3d at 1272. Thus, Movant is not entitled to relief as to this claim.

*C. Claim 4*

In Claim 4, Movant argues that Count 1— assaulting, resisting, or impeding a federal officer in performance of his official duties, in violation of 18 U.S.C. § 111(b)—is not a crime of violence for purposes of Count 2. (Doc. 279 at 1-5). However, the Eleventh Circuit already ruled on this claim, holding that § 111(b) is a crime of violence. *Bates*, 960 F.3d at 1285-87. Nevertheless, Movant argues that intervening law has held that § 111(b) is not a crime of violence. (Doc. 279 at 1, 5). But the case that Movant cites, *Borden v. United States*, 141 S. Ct. 1817 (2021), provides no such support. *Borden* held that an offense that can be committed

---

[5] In any event, *Rehaif* was issued after Movant's trial, and it is axiomatic that counsel cannot be ineffective failing to anticipate changes in the law. *See Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) (ruling that "it generally does not fall below the objective standard of reasonableness for trial counsel to fail to raise a claim in anticipation that undeniably would lose under current law but might succeed based on the outcome of a forthcoming Supreme Court decision"); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." (brackets and internal quotation marks omitted)).

recklessly does not categorically constitute a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B). 141 S. Ct. at 1825. Yet *Borden* does not disturb the Eleventh Circuit's conclusion in *Bates* that § 111(b) constitutes a crime of violence because the Eleventh Circuit squarely rejected Movant's argument that § 111(b) could be violated with something less than intentional conduct, noting that "Bates does not explain how one may accidentally commit a forcible assault that results in bodily injury." *Bates*, 960 F.3d at 1287. Indeed, "Bates's argument ignores that the statute requires the defendant to act 'forcibly' and . . . forcible assault means a *willful* threat or attempt to inflict bodily injury." *Id.* (some internal quotation marks omitted). Thus, because violating § 111(b) requires more than reckless conduct, *Bates*'s conclusion that § 111(b) is a crime of violence remains good law, and Movant is not entitled to relief on this claim.

## III. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right

"includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

It is **RECOMMENDED** that a certificate of appealability be **DENIED** because resolution of the issues presented is not debatable. If the District Judge adopts this recommendation and denies a certificate of appealability, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## IV. Conclusion

For the reasons stated above, it is **ORDERED** that Movant's motion to amend his § 2255 motion (Doc. 275) be **GRANTED**, and it is **RECOMMENDED**

that the instant motion to vacate (Doc. 265) be **DENIED** and a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**SO ORDERED AND RECOMMENDED**, this 3rd day of November, 2023.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE